UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PEARSON,<br><br>   Plaintiff,<br><br>  v.<br><br>KAISER FOUNDATION HOSPITALS, et al.,<br><br>   Defendants. | No. 2:20-cv-02335-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court are two Motions for Summary Judgment, or in the alternative, Summary Adjudication, filed by the following groups of Defendants: (1) Defendants Kaiser Foundation Hospitals and the Permanente Medical Group, Inc. ("Kaiser Defendants" or "Kaiser"), ECF No. 36; and (2) Defendant Commonspirit Health ("Commonspirit" and collectively with Kaiser Defendants, "Defendants"), ECF No. 37. For the following reasons, those Motions are GRANTED.[1]

///
///
///

---

[1] Because oral argument would not have been of material assistance, the Court ordered these matters submitted on the briefs. E.D. Local Rule 230(g).

1

# BACKGROUND[2]

Plaintiff James Pearson ("Plaintiff") lost his leg from above the knee in a farming accident when he was four years old and has since used a prosthetic leg for mobility. Pl.'s Decl., ECF No. 43-1 ¶ 6. When Plaintiff is not wearing his prosthetic leg, he uses crutches. See id. ¶ 8. On occasion, when not using his prosthetic leg, Plaintiff ambulates by hopping a short distance at home to the restroom. The prosthetic leg requires electricity to function, or it becomes stiff, so Plaintiff "charge[s] it every night to ensure that the battery works for the entirety of the next day." Id. ¶ 7.

### A.   Events Relating to Kaiser Defendants

Plaintiff has been a Kaiser member for the past ten years and he intends to remain one. Id. ¶¶ 3–4. The closest Kaiser facility to him is Kaiser Permanente Roseville Medical Center ("Kaiser Roseville"), located in Roseville, California, and Plaintiff states that he goes to this location for all of his medical needs. Id. ¶ 5. On May 8, 2020, Plaintiff checked himself into Kaiser Roseville because he was having thoughts of self-harm, including thoughts of hanging himself. Once there, Plaintiff was escorted to a room located in the emergency department, was informed that he was being placed on a hold pursuant to California Welfare and Institutions Code § 5150,[3] and was required to remain at the emergency department overnight due to his suicidal ideations. Prior to this date, Plaintiff never received any treatment himself at the Kaiser Roseville emergency department.

///

---

[2] Unless otherwise noted, the following undisputed facts are taken, primarily verbatim, from Kaiser Defendants' Statement of Undisputed Facts, Commonspirit's Statement of Undisputed Facts, and Plaintiff's Responses thereto. ECF Nos. 36-2, 37-2, 43-4, 46-4. The Court will recount only the facts necessary to resolve the pending Motions. However, the Court notes that it has carefully reviewed all the pleadings and evidence presented in this case.

[3] This provision states that "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to themselves," that person may be detained "for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." Cal. Welf. & Inst. Code § 5150(a).

2

Plaintiff's patient room did not have a bathroom, but one was located across the hallway. The nurses' station was located to the right of the bathroom and a security guard was placed outside Plaintiff's room. That evening, Plaintiff asked the security guard to charge his prosthetic leg. The security guard called the nurse on duty, Stacey Treadway ("Nurse Treadway"), who informed Plaintiff that due to concerns for his safety, he is not allowed to charge his prosthetic leg in his room with a three-foot charging cord. However, Nurse Treadway told Plaintiff she would charge it at the nurses' station. Plaintiff testified at his deposition that he then told Nurse Treadway, "I need my leg to get up and walk[,]" to which she responded, "I know." See Ex. 4, Pl.'s Dep., ECF No. 43-3, at 47–48. According to Plaintiff, "it was [his] expectation that while the prosthetic leg was being charged, [he] would be provided with crutches or a wheelchair either in [his] room or immediately outside it[,] [b]ut no mobility devices were ever offered at any point during [his] stay . . ." See Pl.'s Decl., ECF No. 43-1 ¶ 14. On the other hand, Kaiser Defendants assert that had Plaintiff requested such a mobility device, one could have been provided to him. See Ex. C, Treadway Dep., ECF No. 36-5, at 80 (further stating that she "would just give [Plaintiff] his leg back if he asked to go to the bathroom.").

Plaintiff had to use the bathroom on two occasions throughout the night. Both times, Plaintiff hopped once from the foot of the bed to the doorpost and informed the security guard that he needed to use the bathroom. The security guard looked at him and said go ahead. Plaintiff states it took about ten hops to reach the bathroom. After using the bathroom, Plaintiff hopped back to his room and got back into bed. His prosthetic leg was returned to him in the morning. Plaintiff has not returned to the Kaiser Roseville emergency department for any treatment since then.

**B.   Events Relating to Commonspirit**

The following morning, on May 9, 2020, Plaintiff was transferred to St. Joseph's Behavioral Center in Stockton, California ("St. Joseph's"), which is operated by Commonspirit. In his declaration, Plaintiff recounts the following:

///

> During my stay at St. Joseph's, I showered on 2 separate occasions, both times in the evening. The first time that I wanted to shower, I informed the nurse that I need to charge my prosthetic leg after the shower. The nurse said "okay, the showers are down the hall to the left." I then told the nurse that I needed to remove my prosthetic leg when I showered and that I also needed a way to return to my room afterward. She told me to tell this to the nurses that were near the shower. While wearing my prosthetic leg, I walked to where the showers were, which was very far from my room, at least 50 to 60 feet, and through a set of closed double doors. Upon reaching the shower, I noticed that no staff were present in the immediate area. I also did not see any mobility devices nearby. I entered the bathroom and then removed my prosthetic leg and I proceeded with taking a shower. After I finished showering, I dried off, put on the hospital pants, and rolled up the pant leg on the side of my amputation and tucked it in the front of my waistband so it would not be dangling down. I then opened the door to the hallway after grabbing my prosthetic leg and clothes.
>
> I saw a nurse standing near the door. I said to the nurse, "Can I get some help? I need to get to my room." The nurse looked at me and saw that I was holding my prosthetic leg and clothes in my hands and that one of my legs was amputated. Rather than offer me a wheelchair, crutches, or at the very least helping me carry the prosthetic leg and clothes, the nurse simply told me that the door was open and "you can go." I proceeded to hop to my room while carrying my prosthetic leg and clothes. . . .

Pl.'s Decl., ECF No. 46-1 ¶¶ 23–24.

At the same time, Plaintiff says that another patient named Walter tried to approach him after he showered, and that the staff focused on keeping Walter away from Plaintiff as he hopped back to his room. Almost immediately after Plaintiff returned to his room, a nurse came in and Plaintiff told her that he needed his leg charged, to which she responded that she would take it to the nurses' station. On both nights, Plaintiff's prosthetic leg was charged overnight, and Plaintiff had no issue getting it back in the morning.

Plaintiff was discharged from St. Joseph's on May 11, 2020. Although Plaintiff would not seek care directly at St. Joseph's, he claims that if Kaiser Defendants transferred him there again for future inpatient care, he would comply. See id. ¶ 32.

///

**STANDARD**

The Federal Rules of Civil Procedure[4] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

5

affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

    In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

## ANALYSIS

In the operative First Amended Complaint, Plaintiff asserts the following causes of action against all Defendants: (1) Violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181 et seq. ("ADA"); (2) Violation of the California Disabled Persons Act, California Civil Code §§ 54 et seq. ("CDPA"); and (3) Violation of California's Unruh Civil Rights Act, id. §§ 51 et seq. ("Unruh Act"). See ECF No. 14. Defendants seek summary judgment in their favor on all three causes of action. The Court will address each of them in turn.

### A.   First Cause of Action:  ADA

Title III of the ADA prohibits discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The crux of Plaintiff's ADA cause of action is that, during his stay at both facilities, Defendants' employees did not provide him with any mobility aids to assist him with walking while his prosthetic leg was charging and thus Plaintiff was forced to hop on one leg to the bathroom at Kaiser Roseville and from the shower at St. Joseph's. See Pl.'s Separate Statement ISO Opp'n Kaiser Defs.' Mot. Summ. J., ECF No. 43-4 ¶ 39; Pl.'s Opp'n Commonspirit's Mot. Summ. J., ECF No. 46, at 7. Before reaching the merits of this claim, however, the Court must address whether Plaintiff has standing to pursue this cause of action against Defendants. Standing is a jurisdictional issue, deriving from the requirement that an actionable case or controversy be present. Doe No. 1 v. Reed, 697 F.3d 1235, 1238 (9th Cir. 2012). Thus, standing must be "likely" as opposed to merely "speculative" so that the claimed injury is redressable by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The only relief available to private parties under the ADA is injunctive relief; monetary damages may not be recovered. See 42 U.S.C. § 12188; Chapman v. Pier 1

7

1  Imports (U.S.), Inc., 631 F.3d 939, 946 (9th Cir. 2011).  To establish standing under the
2  ADA, the plaintiff "must demonstrate a real and immediate threat of repeated injury in the
3  future."  Chapman, 631 F.3d at 946 (citation and internal quotation marks omitted).  "An
4  ADA plaintiff establishes such a real and immediate threat if 'he intends to return to a
5  noncompliant place of public accommodation where he will likely suffer repeated injury.'"
6  Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 867 (9th Cir. 2014)
7  (quoting Chapman, 631 F.3d at 948).  "Alternatively, a plaintiff who 'has visited a public
8  accommodation on a prior occasion' demonstrates a real and immediate threat if he 'is
9  currently deterred from visiting that accommodation by accessibility barriers.'"  Id.
10  (quoting Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1041 (9th Cir. 2008)).  "While past
11  wrongs do not in themselves amount to a real and immediate threat of injury necessary
12  to make out a case or controversy, past wrongs are evidence bearing on whether there
13  is a real and immediate threat of repeated injury."  Fortyune v. Am. Multi-Cinema, Inc.,
14  364 F.3d 1075, 1081 (9th Cir. 2004) (internal citations, quotation marks, and alteration
15  omitted).  "[I]t is not the presence or 'absence of a past injury' that determines Article III
16  standing to seek injunctive relief; it is the imminent 'prospect of future injury.'"  Ervine,
17  753 F.3d at 868 (quoting Chapman, 631 F.3d at 951).

### 1. Kaiser Defendants

19  Kaiser Defendants argue that Plaintiff lacks standing because there is not a
20  sufficient likelihood that Plaintiff will suffer a similar future injury at their facility.  See
21  Kaiser Defs.' Mem. ISO Mot. Summ. J., ECF No. 36-1, at 19–21.  It is undisputed that
22  (1) "[p]rior to his admission in May 2020, Plaintiff never received any treatment himself at
23  the Kaiser Roseville emergency [department]," and (2) "Plaintiff has not returned to this
24  emergency [department] for any treatment since his admission in May 2020."  See Pl.'s
25  Separate Statement ISO Opp'n Kaiser Defs.' Mot. Summ. J., ECF No. 43-4 ¶¶ 42–43.
26  Plaintiff counters that, "[i]n light of his mental health history (including a history of
27  suicidal ideations), and ongoing difficulty of finding suitable medication, Plaintiff would
28  like [] the option of becoming an inpatient patient at Kaiser's psychiatric unit if necessary

to get back on a stable course with his depression." Pl.'s Opp'n Kaiser Defs.' Mot. Summ. J., ECF No. 43, at 15.  However, there is nothing in the present evidentiary record indicating that Plaintiff will return to the Kaiser Roseville emergency department for inpatient psychiatric care, and a desire to possibly exercise that option in the future is insufficient.  Even on less specific grounds, although Plaintiff is a Kaiser member and goes to Kaiser Roseville for his medical needs, he has not alleged or provided any evidence to show that he has suffered a similar injury at that facility at any other time (i.e., that he was not provided a mobility device when he did not have his prosthetic leg). Compare Grechko v. Calistoga Spa, Inc., No. 21-cv-06726-EMC, 2022 WL 298571, at *4–5 (N.D. Cal. Feb. 1, 2022), aff'd, 2023 WL 2755323 (9th Cir. Apr. 3, 2023) (finding no real and immediate threat of repeated injury, in part, because "Plaintiffs allege that they have visited [defendant] hotel for 24 years and never previously had their request for accommodation denied.") (emphasis in original).

Because he has not shown any real and immediate threat of Kaiser Defendants not providing him mobility devices in the future, Plaintiff lacks standing to pursue his ADA cause of action against them, and the Court need not reach the merits of this claim.  As such, Kaiser Defendants' Motion for Summary Judgment as to this cause of action is GRANTED.

### 2.    Commonspirit

Similarly, Commonspirit argues that Plaintiff lacks standing because "he has expressed no intent to visit [St. Joseph's] again in the future."  Commonspirit's Mem. ISO Mot. Summ. J., ECF No. 37-3, at 14.  Plaintiff concedes that he himself does not intend to seek care directly at St. Joseph's, but he asserts that Kaiser Defendants' "practice [is] to send their psychiatric patients to St. Joseph's and Plaintiff will consent to such transfer again."  Pl.'s Opp'n Commonspirit's Mot. Summ. J., ECF No. 46, at 13.  However, Plaintiff's position is tenuous and speculative.  See Chapman, 631 F.3d at 953 (stating an ADA plaintiff lacks standing "if he is indifferent to returning to" the place of public accommodation).  Even assuming that Plaintiff will be placed on a further involuntary

psychiatric hold at Kaiser Roseville, there is no guarantee that he will be sent to St. Joseph's.

Commonspirit employees testified in their depositions that St. Joseph's receives psychiatric patients from Kaiser facilities. See Ex. 7, Schroeter Dep., ECF No. 46-3, at 149 (unable to answer whether St. Joseph's accepted patients from Kaiser Roseville but stated that he was aware of patients being transferred from a Kaiser facility); Ex. 8, Resuello-Martinez Dep., id., at 159 (confirming that St. Joseph's accepted "patients that were being transferred from the Kaiser facility"). However, Nurse Treadway testified in her deposition that, in addition to St. Joseph's, Kaiser Roseville also sends patients to "Sierra Vista," although she was unable to confirm whether more patients were sent there or to St. Joseph's. See Ex. 5, Treadway Dep., id., at 121–22 ("I feel like at Kaiser that Sierra Vista was more – the one I heard of more often, but – it depends."). Regardless, she also testified that the transfer of a Kaiser psychiatric patient "depends on if Psyche Hospitals have beds open." Id. at 113.

Plaintiff does not dispute that Kaiser Roseville sends psychiatric patients to other facilities like Sierra Vista and not just St. Joseph's. See Pl.'s Opp'n Commonspirit's Mot. Summ. J., ECF No. 46, at 13. Instead, Plaintiff claims that "should Kaiser decide to transfer [him] to St. Joseph's during [his] future inpatient care at Kaiser, [he] would defer to Kaiser's decision." Pl.'s Decl., ECF No. 46-1 ¶ 32; see also Ex. 4, Pl.'s Dep., ECF No. 46-3, at 89. Such a statement demonstrates indifference rather than an intent to return. Accordingly, the Court finds that Plaintiff lacks standing to pursue his ADA cause of action against Commonspirit and therefore it need not reach the merits of the underlying claim. Commonspirit's Motion for Summary Judgment as to this cause of action is thus GRANTED.[5,6]

///

---

[5] Because the Court need not consider Exhibits A and B to the Declaration of Jodie Olguin in reaching its decision, Commonspirit's Request to Seal those documents, ECF No. 49, is DENIED as moot.

[6] The Court is sympathetic to Plaintiff's position in this case. However, standing is a requirement not just of ADA claims but of all cases and as discussed above, the Court finds it is lacking here.

**B.     Second and Third Causes of Action:  CDPA and Unruh Act**

Having found that Defendants are entitled to summary judgment on the federal ADA claim upon which federal jurisdiction was based, the Court declines to exercise supplemental jurisdiction over the remaining state law causes of action.  See 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, Kaiser Defendants and Commonspirit's Motions for Summary Judgment, ECF Nos. 36–37, are each GRANTED.  Commonspirit's Request to Seal, ECF No. 49, is also DENIED as moot.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

Dated:  July 5, 2023

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE